UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES HEALY, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br> v.<br><br>MILLIMAN, INC., d/b/a INTELLISCRIPT,<br><br>       Defendant. | CASE NO. C20-1473-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Milliman, Inc.'s motions for a protective order and for summary judgment (Dkt. Nos. 19, 24) and Plaintiff James Healy's motion to seal (Dkt. No. 34). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Defendant's motion for a protective order (Dkt. No. 24), DENIES Defendant's motion for summary judgment (Dkt. No. 19), and DENIES as moot Plaintiff's motion to seal (Dkt. No. 34) for the reasons explained herein.

I.   BACKGROUND

Defendant, through its IntelliScript service, provides reports to life insurance and other risk-management companies containing insurance applicants' medical and prescription histories.

(Dkt. Nos. 19 at 4, 32 at 8.)[1] Defendant relies on a variety of sources to compile the information included in the reports, including Pharmacy Benefit Managers, pharmacies, and health insurance companies. (Dkt. No. 19 at 4.) Defendant captures a significant volume of data and has prepared over 40 million reports in the last six years. (*Id.* at 19.) As a result, Defendant relies heavily on automated processes to gather the information and then applies algorithms to analyze it. (Dkt. Nos. 19 at 4–5, 32 at 8–9.)

Defendant relies on a system to match individuals' personal identifying information to their medical and prescription records to ensure that the information included in its reports relates to the appropriate individual. (Dkt. No. 19 at 6.) This identifying information includes an individual's name, social security number, date of birth, and zip code. (*Id.* at 6.) But in order "to account for misspelling and other [potential] errors" in the data it receives, it also includes information for individuals with near names, *i.e.*, "same consonants, reversing first and last names, [and] nicknames." (*Id.* at 5.) In some instances, Defendant also "remov[es] the suffix or hyphen" in an individual's name (*Id.*) This indisputably results in the inclusion of erroneous information in Defendant's reports, the frequency of which is the subject of this suit. (*Compare* Dkt. No. 19 at 2, *with* Dkt. No. 32 at 12.)

Plaintiff applied for life insurance in 2020 and was denied coverage based on a report from Defendant to his prospective insurer that listed several conditions Plaintiff never had. (Dkt. Nos. 19 at 6, 32 at 9.) The errors were substantial and included the following wrongly attributed conditions: osteoarthritis, diabetes, liver disease, chest pains, and sleep apnea. (Dkt. No. 40 at 5–14.) Plaintiff contacted Defendant regarding the erroneous report. (Dkt. No. 32 at 9.) Yet despite what Defendant describes as its "rigorous reinvestigation protocols," it is undisputed that it did not correct the report in a timely manner. (Dkt. No. 19 at 6.) As a result, when Plaintiff reapplied for life insurance with the same insurer, he was again denied. (Dkt. No. 32-1 at 3.) Defendant

---

[1] Defendant asserts that the applicants authorize it to compile this information by completing a HIPAA authorization when they apply for insurance. (Dkt. No. 19 at 4.)

indicates that its failure to timely correct Plaintiff's report was human error on the part of its staff and not reflective of a systematic failure. (Dkt. No. 19 at 2.)

Plaintiff filed a class-action complaint asserting that Defendants' actions violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (Dkt. No. 1). In it he alleged violations of § 1681e(b) for inaccurate reporting, §1681i(a) for a failure to adequately investigate errors, § 1681i(f) for a failure to forward disputed items for resolution to source consumer reporting agencies, and § 1681g(a)(2) for a failure to disclose to Plaintiff the sources of the information that Defendant included in the report. (Dkt. No. 1 at 13–15.)

Litigation in this putative class action is still in its early stages. Defendant answered Plaintiff's complaint in December 2020. (Dkt. No. 14.) The parties held their Rule 26(f) conference and made initial disclosures in February 2021. (Dkt. No. 33 at 2.) At the time, Plaintiff lodged 63 requests for production ("RFP"). (*See* Dkt. No. 25 at 9–38.) In general, they address how Defendant gathers and processes the data included in its reports, its quality control system, and how it resolves disputed items. (*Id.*) In response, Defendant produced just nine documents. (Dkt. No. 25 at 9–38.)[2] Following two discovery conferences, Defendant moved for a protective order and for summary judgment. (*See* Dkt. Nos. 19, 24). Defendant argues that Plaintiff's suit is nothing more than a "fishing expedition based on a hunch" that Defendant's systems and procedures are inadequate under the FCRA. (Dkt. No. 24 at 5.) In response, Plaintiff asks the Court to deny summary judgment pursuant to Federal Rule of Civil Procedure 56(d) and to strike certain declarations in support of Defendant's summary judgment motion. (Dkt. Nos. 32

---

[2] Specifically, Defendant produced the following:

> (1) a six-page untitled document establishing "procedures for the Milliman IntelliScript practice that are designed to ensure compliance with the letter and spirit of the" FCRA; (2) insurance policies; (3) three copies of what appear[s] to be the error-ridden Irix report Milliman sold to Americo relating to Mr. Healy; (4) two PowerPoint presentations marketing the Intelliscript product; and (5) two organizational charts.

(Dkt. No. 33 at 2.)

at 15, 47 at 1; *see generally* Dkt. No. 29.) Plaintiff also moves to seal certain documents Defendant labeled as "confidential" pursuant to the protective order filed in this case (Dkt. No. 28) that Plaintiff referenced and/or included in support of its opposition brief. (*See* Dkt. No. 34.)

II. **DISCUSSION**

Congress enacted the FCRA to "protect consumers from the transmission of inaccurate information about them." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Liability under the Act is "predicated on the reasonableness of the [reporting agency's] procedures in obtaining [] information." *Id.* at 1333. It is not a strict liability statute. *Id.*

Defendant argues that its procedures are reasonable, that Plaintiff's experience was unique, and that Plaintiff has no colorable FCRA claims. (*See generally* Dkt. Nos. 19, 24.) Defendant suggests that it should not be forced to incur the expense of full-blown discovery, given its allegedly reasonable procedures. (*See generally* Dkt. No. 24) However, because the FCRA's requirements are generally premised on the reasonableness of Defendant's procedures, the discovery Plaintiff seeks is just as applicable to the class-wide allegations as it is to Plaintiff's individual claims. The Court FINDS, for the reasons described below, that Plaintiff has met his burden to establish that the discovery sought by Plaintiff is appropriate at this time and that summary judgment prior to such discovery would be premature.

A. **Defendant's Motion for a Protective Order**

The Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" from unnecessary and irrelevant discovery requests. Fed. R. Civ. P. 26(c). Where class discovery is sought, "[t]he availability and scope of pre-certification discovery lie within the discretion of the Court." *Heredia v. Eddie Bauer LLC*, 2017 WL 1316906, slip op. at 1 (N.D. Cal. 2017). "[O]ften the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Before obtaining pre-certification discovery, "Plaintiff must 'either make a *prima facie* showing that the Rule 23 class

action requirements are satisfied, or . . . show that discovery is likely to produce substantiation of the class allegations.'" *Lieberg v. Red Robin Gourmet Burgers, Inc.*, 2016 WL 1588381, slip op. at 1 (W.D. Wash. 2016) (quoting *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 622 (N.D. Cal. 2013)).

Defendant seeks to limit its responses to RFPs 8, 11, 14–15, 24–25, 31–34, and 36 solely to materials related to Plaintiff and to not produce any materials responsive to RFPs 12–13, 17–23, 26–27, and 57–63, on the basis that those RFPs relate solely to class allegations. (Dkt. No. 24 at 3.) Defendant contends that Plaintiff cannot make the required *prima facie* showing or demonstrate that this discovery is likely to substantiate the class allegations because Plaintiff "lacks a cognizable claim under the FCRA." (*Id.* at 2.) Defendant separately argues that the requests for production are "vastly overbroad, unduly burdensome, and disproportionate to the needs of the case." (*Id.*)

    1.  <u>§ 1681e(b) Claim</u>

"Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681(e)(b). Plaintiff seeks a variety of discovery relevant to the issue of known errors in Defendant's reports. (*See generally* Dkt. No. 25 at 11–38.) Defendant argues that Plaintiff is not entitled to that discovery at this stage because Plaintiff's claim based on a violation of this requirement is "without merit" in that it has "reasonable procedures in place that ensure the accuracy of the information it provides." (Dkt. No. 24 at 8–9.)

Nevertheless, in this instance those "reasonable procedures" resulted in an inaccurate report. Moreover, by Defendant's own admission, 1.9% of the 81,464 consumers who requested reports from Defendant between January 1, 2015 through December 31, 2020 had errors in their reports. (Dkt. No. 23 at 1–2.) Without further discovery, it is impossible to say what the actual number of erroneous reports over this time was. But it could be significant. Extrapolating the

known error rate for that subset of reports to all reports prepared by Defendant during the same period would result in over 800,000 erroneous reports. (*Id.* (calculated as 42,781,776 reports x 1.9%).)

This is sufficient to demonstrate that the discovery Plaintiff seeks relevant to Plaintiff's § 1681e(b) claim is permissible at this stage.

### 2. § 1681i(a) Claim

Within 30 days of a dispute lodged by a consumer, a reporting agency must, "free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate" and delete "the information found to be inaccurate." 15 U.S.C. §§ 1681i(a)(1)(A), (a)(5). Defendant admits that here it took six months to complete this process. (Dkt. No. 22 at 2–5.) However, Defendant argues that this was the result of human error, rather than a systemic deficiency. (Dkt. No. 24 at 10.) Regardless, at least here, the investigation was unreasonably delayed and, without the discovery sought, Plaintiff has no means to determine whether his experience was, in fact, unique. *See Doninger v. P. N.W. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."). This is sufficient to demonstrate that discovery relevant to Plaintiff's § 1681i(a) claim is permissible at this stage.

### 3. § 1681i(f) Claim

The investigation requirement described in § 1681i is limited for resellers of consumer information. *See* 15 U.S.C. § 1681i(f)(1). At a minimum, though, resellers must, upon notice of a dispute, convey that notice in a timely manner to the consumer reporting agency who provided the information at issue. 15 U.S.C. § 1681i(f)(2). Defendant argues that Plaintiff's § 1681i(f) claim is without merit and not deserving of discovery because it is not a reseller. (Dkt. No. 24 at 6–7.) This is based on Defendant's assertion that it "utilizes its proprietary systems to both assemble and evaluate consumer information to provide an insurance company a unique

applicant 'score' based on the applicant's medical and prescription history." (*Id.*)

A "reseller" is defined as a consumer reporting agency that "assembles and merges information contained in the database of another consumer reporting agency . . . for purposes of furnishing such information to any third party, *to the extent of such activities* . . . and does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681a(u) (emphasis added). A plain reading of the statute suggests that a company could be a reseller with respect to some of its activities and not a reseller with respect to others, depending on whether it is collecting the information from another consumer reporting agency or elsewhere. While Defendant argues that an all-or-nothing approach is required, its interpretation of relevant caselaw is not sufficiently persuasive to conclude that further discovery on Plaintiff's reseller claim is not warranted. (*See* Dkt. Nos. 19 at 16, 41 at 4, 43 at 4–5 (citing *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1346 (N.D. Ga. 2020); *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 568 (E.D. Ky. 2006)).)

### 4. § 1681g(a)(2) Claim

A consumer reporting agency such as Defendant, must "upon request . . . disclose to the consumer . . . the sources of the information" used in its report. 15 U.S.C. § 1681g(a)(2). Defendant asserts that Plaintiff's claim based on a violation of this provision does not warrant discovery because Plaintiff never pled that he made a request. (Dkt. Nos. 19 at 6, 24 at 7.) But according to the complaint, Plaintiff "requested a copy of his file" and that Defendant "did not identify the . . . sources of the information contained in the report." (Dkt. No. 1 at 8–9.)[3] This allegation is sufficient to warrant further discovery regarding information relevant to Plaintiff's § 1681g(a)(2) claim, in light of Defendant's concession that its website, where Plaintiff was initially directed to request information on his report, did not offer the option to request source information. (Dkt. No. 19 at 17); *see Patel v. Trans Union, LLC*, 308 F.R.D. 292, 305 (N.D. Cal.

---

[3] Defendant takes issue with the veracity of this allegation. (*See* Dkt. No. 19 at 17.) It would be premature for the Court to address this argument.

ORDER
C20-1473-JCC
PAGE - 7

2015) (specific language not required to trigger § 1681g(a) obligation when reporting agency "did not tailor its disclosure to specific consumer requests.")

5. Breadth of Production Sought

Defendant separately asserts that the discovery Plaintiff seeks is "overbroad, unduly burdensome, and target[s] irrelevant information." (Dkt. No. 24 at 10.) After having reviewed the RFPs at issue, the Court agrees that numbers 21 and 22, while relevant, are overbroad in that they are not time-limited. (*See* Dkt. No. 25 at 20–21.) The Court disagrees with Defendant's contention regarding the remaining disputed RFPs.

Accordingly, Defendant's motion for a Rule 26(c) protective order is GRANTED with respect to RFPs 21 and 22 and DENIED with respect to the remaining requests.

**B.      Defendant's Motion for Summary Judgment**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing summary judgment that "cannot present facts essential to justify its opposition" has another option: it may request that the Court delay consideration of the summary judgment motion so that it may conduct further discovery. Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to Rule 56(f) [4] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006). The party must also present "some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v.*

---

[4] In 2010, Rule 56(f) was renumbered to Rule 56(d). Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)," so authority applying former Rule 56(f) applies equally to Rule 56(d). Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment.

*Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). An affidavit based on speculation does not suffice, *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998), nor does "[t]he mere hope that further evidence may develop prior to trial," *Cont'l Mar. of S.F. v. Pac. Coast Metal Trades Dist. Council, Metal Trades Dep't, AFL-CIO*, 817 F.2d 1391, 1395 (9th Cir. 1987).

Defendant first argues that Plaintiff fails to establish genuine issues of material fact with respect to each of the four FCRA claims described above. (Dkt. No. 19 at 8–18); *see supra* Part II.A. In response, Plaintiff asks the Court to deny Defendant's motion or defer ruling on it pursuant to Rule 56(d) because there are facts subject to the outstanding discovery requests that are solely in Defendant's possession and are essential to justify Plaintiff's opposition to Defendant's summary judgment motion. (Dkt. No. 32 at 16–27 (citing Fed. R. Civ. P. 56(d)).) In support, Plaintiff provides a declaration describing the specific facts he seeks to discover, which are likely to exist and are solely within Defendant's control, and articulates why those facts are essential to his opposition. (*See* Dkt. No. 36 at 2–5.) Based on this declaration, the Court FINDS that summary judgment on Plaintiff's claims based on Defendants arguments described above, *see supra* Part II.A, would be premature.

Defendant next argues that Plaintiff fails to present evidence supporting the notion that Defendant's acts were willful, thereby precluding an award of FCRA statutory damages. (*Id.* at 18–23.) For willful violations, the FCRA provides damages ranging from $100 to $1000, punitive damages, and attorney fees and costs. 15 U.S.C. § 1681n. A willful act is both an intentional and a reckless act, which is something more than being "careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 69 (2007). For negligent violations, a consumer is limited to actual damages. 15 U.S.C. § 1681o.

As Plaintiff points out, many courts have held that the willfulness of an alleged FCRA violation is not an appropriate issue for summary judgment. (Dkt. No. 32 at 27 (citing *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (collecting cases); *Hammer v. JP's*

1 | *S.W. Foods, L.L.C.*, 739 F. Supp. 2d 1155, 1167 (W.D. Mo. 2010) (same)).) Nevertheless, the
2 | Court need not opine on that issue.
3 | It is clear that, even if willfulness were an issue appropriate for summary judgment,
4 | additional discovery is required before Plaintiff could put forth evidence addressing it. Plaintiff's
5 | outstanding RFPs seek information regarding other disputes and complaints that Defendant has
6 | received; its policies and procedures to resolve those disputes; communications with its data
7 | sources and clients; and the algorithms, matching software, and mechanisms that Defendant
8 | applies to the data it receives. (*See* Dkt. No. 25 at 9–37.) All of which speak to whether
9 | Defendant acted in a merely careless manner, or its actions rose to the level of recklessness. The
10 | Court need not address Defendant's separate argument regarding a lack of actual damages. (*See*
11 | Dkt. No. 19 at 20–23.) It is mooted by the Court's determination that declining summary
12 | judgment on the availability of statutory damages is warranted.

Accordingly, Defendant's motion for summary judgment is DENIED. Separately, the Court need not address Plaintiff's request to strike (Dkt. Nos. 32 at 15, 47 at 1) portions of the declarations that Defendant filed in support of its summary judgment motion, as they were not necessary for the Court to reach its holding on Defendant's motion.

C. **Plaintiff's Motion to Seal**

Plaintiff moved to maintain under seal unredacted versions of its brief opposing Defendant's summary judgment motion, a declaration supporting that brief, and an exhibit attached to the declaration. (Dkt. No. 34 at 1 (referencing Dkt. Nos. 35–37).) All of these documents contain references to an internal policy document that Defendant labeled as "confidential" when producing it pursuant to the protective order entered in this case. (*See* Dkt. Nos. 28, 34 at 1.) Defendant has since consented to removal of the "confidential" designation and Plaintiff has requested that the Court unseal the documents he previously filed under seal. (*See* Dkt. Nos. 49 at 1, 50 at 1–2.) Accordingly, Plaintiff's motion to maintain these documents under seal (Dkt. No. 34) is DENIED as moot.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for a protective order (Dkt. No. 24) is GRANTED in part and DENIED in part, its motion for summary judgment (Dkt. No. 19) is DENIED, and Plaintiff's motion to seal (Dkt. No. 34) is DENIED as moot. Defendant need not respond to RFPs 21 and 22 as submitted. However, Plaintiff may revise and resubmit RFPs 21 and 22, to contain a reasonable time limitation, within seven (7) days of this order. Finally, the Clerk is DIRECTED to unseal Docket Numbers 35, 36, and 37.

DATED this 14th day of May 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE