THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES HEALY, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MILLIMAN, INC., d/b/a INTELLISCRIPT, <br><br> Defendant. | CASE NO. C20-1473-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiff's motion to modify a class definition (Dkt. No. 166), Defendant's motion for partial summary judgment and/or to decertify that same class (Dkt. No. 167), and the parties' motions to seal (Dkt. Nos. 183, 206, 211).[1] Having thoroughly considered the briefing on the motions presently before the Court, along with the relevant record and oral argument, (*see* Dkt. No. 197), the Court DENIES Plaintiff's motion to modify (Dkt. No. 166) as moot, GRANTS in part and DENIES in part Defendant's motion for partial summary judgment and to decertify (Dkt. No. 167), and it GRANTS the motions to seal (Dkt. Nos. 183, 206, 211), for the reasons explained herein.

---

[1] Plaintiff also moves for partial summary judgment on whether class member's reports contain inaccurate information. (*See generally* Dkt. No. 185.) However, Plaintiff asked the Court to hold the motion in abeyance until class members are notified and have the opportunity to opt out. (*See* Dkt. Nos. 185 at 6, 195 at 15.) Neither of which has yet occurred.

## I. BACKGROUND

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, mandates amongst other things that a consumer reporting agency ("CRA"), such as Defendant: (1) use "reasonable procedures" to ensure that its reports contain accurate information and, (2) within 30 days of receiving notice of an inaccuracy, conduct a "reasonable reinvestigation" of disputed items. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018); *Syed v. M-I, LLC*, 853 F.3d 492, 496 (9th Cir. 2017). If a CRA willfully fails to meet either of these requirements, the FCRA provides a private right of action. *See* 15 U.S.C. § 1681n.

The Court has described the facts of this case in prior orders. (*See, e.g.*, Dkt. Nos. 51, 86, 122, 126.) To briefly summarize, Plaintiff alleges Defendant, through its IntelliScript service, compiles reports containing a consumer's medical history and sells it to third party insurers. (*See generally* Dkt. No. 1.) In this case, Defendant asserts his report contained multiple erroneous records, *i.e.*, someone else's medical history. (*Id.*) As a result, he was denied life insurance coverage. (*Id.*) Plaintiff believes this is due to Defendant's failure to implement procedures to adequately ensure the accuracy of the information it compiles and reports out. (*Id.*) Plaintiff also alleges that, when he contacted Defendant seeking a corrected report, it failed to timely issue one, or even attempt to locate the source of its error(s). (*Id.*) Instead, it charged Plaintiff with proving the report's inaccuracy, rather than perform its own investigation. (*Id.*) Plaintiff contends that his experience is not unique. (*Id.*) On this basis, he moved for class certification. (*See generally* Dkt. No. 95.)

In so moving, Plaintiff's primary evidence of class-wide inaccuracy, *i.e.*, harm, was expert analysis identifying mismatched social security numbers in numerous reports issued during the relevant period. (*See id.* at 15). In opposing, Defendant pointed out that, while this may be *indicative* of an inaccurate health record contained within a report, it is not *direct* evidence of such. (*See* Dkt. No. 116 at 12.) The only way to procure such evidence would be through an individualized investigation of each reported consumer's medical history. (*Id.*) And

for this reason, this case does not comply with Rule 23. (*Id.*) The Court disagreed, based on its understanding that direct evidence would be "contained within Defendant's files" and available to Plaintiff through discovery. (Dkt. No. 126 at 8–9) (citing Dkt. No. 125 at 10).[2] As such, no individualized investigation would be needed. (*Id.*) It then certified the following classes:

<u>1681e(b) Inaccuracy Class:</u>

All persons residing in the United States (including all territories and other political subdivisions of the United States), beginning October 5, 2015 and continuing through April 29, 2022, about whom Defendant sold a report to a third party containing one or more items of information which did not pertain to the individual who was the subject of the report.

<u>1681i Failure to Properly Reinvestigate Class:</u>

All persons residing in the United States (including all territories and other political subdivisions of the United States), beginning October 5, 2015 and continuing through April 29, 2022, who disputed the completeness and/or accuracy of one or more items of information on an Intelliscript report for whom Defendant responded with form/template communication substantially in the form of MM_HEALY000315.

(Dkt. No. 124 at 14) (*as modified* at Dkt. No. 140 at 4). Now, with Plaintiff preparing to issue class notice, the parties present the Court with dueling motions implicating the same issue. (*See* Dkt. Nos. 166, 167.)

Plaintiff asks the Court to narrow the inaccuracy class to just those 311,226 persons for whom Defendant included certain cautionary flags in allegedly inaccurate reports. (*See* Dkt. No. 166 at 3.)[3] In response, Defendant moves for partial summary judgment, asking the Court to find, as a matter of law, that class-wide standing is lacking, at least for the inaccuracy class. (*See generally* Dkt. No. 167.) In the alternative, Defendant moves to decertify the inaccuracy class. (*Id.*) This is based on Plaintiff's supposed failure to establish that an individualized inquiry

---

[2] Defendant also challenged class-wide Article III standing, arguing that a naked statutory violation, such as an inaccurate report, is insufficient to establish the requisite injury. (*See* Dkt. No. 116 at 15.) The Court dismissed this argument, noting that class-wide standing need not be demonstrated at the certification stage. (*See* Dkt. No. 126 at 12.)

[3] It appears Plaintiff believes this makes the task of proving class-wide injury less onerous. (*See* Dkt. Nos. 166 at 3–5; 185 at 10.)

ORDER
C20-1473-JCC
PAGE - 3

would *not* be required to demonstrate that Defendant included an erroneous medical record in a consumer's report. (*Id.*) In so moving, Defendant again focuses on the distinction between a mismatched social security number (*i.e.*, a personal identifier) and an erroneous health record (what it describes as a "conflict" vs. a "mixed file"). (*See id.* at 10–15.) Based on these motions, the Court stayed further proceeding(s), including issuance of class notice, pending their resolution. (*See* Dkt. No. 201.) Because standing is a threshold jurisdictional issue, the Court must address it first. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).

## II. DISCUSSION

### A. Standing

For Article III standing, a plaintiff must have an injury which is concrete, particularized, and traceable to the challenged action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Court asked for supplemental briefing on class-wide standing for both classes, following oral argument on the outstanding motions. (*See* Dkt. No. 198.)[4]

The evidentiary burden supporting standing varies, depending on the stage of litigation. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). For example, at the pleading stage, "'general factual allegations . . . may suffice.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992)). But after that, the burden goes up. In this instance, discovery is complete. (*See* Dkt. Nos. 146, 150, 162, 164.) So Plaintiff must present the Court with at least some direct evidence of concrete injury on a class-wide basis. *See TransUnion LLC*, 594 U.S. at 431.

For the inaccuracy class, Plaintiff points to the same type of evidence used to support certification: expert analysis that at least 311,226 of Defendant's consumer reports issued during

---

[4] Because standing is a jurisdictional issue, the Court may raise it *sua sponte*. *See W. Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1113 (W.D. Wash. 2021) (citing *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999)).

the relevant period included 1) a social security number not belonging to the consumer and 2) a risk indicator within that report. (*See* Dkt. No. 177 at 10) (citing Dkt. No. 166 at 37).[5] But again, this is "*indicative* of a misattributed or erroneous health record, it is not *direct* evidence of injury." (Dkt. No. 198 at 2) (emphasis in original). Said another way, this is evidence of conflicting personal identifying information—not health records. And unlike mismatched health records, the reasons for a mismatched personal identifier vary: from a simple transposition[6] to something altogether different. Regardless, mismatched identifiers do not necessarily demonstrate misattributed health records. And without such evidence,[7] Plaintiff cannot establish class-wide standing *at this point in the proceeding. See TransUnion LLC*, 594 U.S. at 431.[8] Therefore, the Court finds Plaintiff has failed to establish the requisite standing for the inaccuracy class.

For the reinvestigation class, Plaintiff alleges Defendant impermissibly shifts the burden onto the disputing consumer, *i.e.*, to reinvestigate reports containing possible erroneous medical records. (Dkt. No. 1 at 5.) In support, Plaintiff provides the Court with communications from Defendant instructing those consumers to contact the medical provider who generated the

---

[5] Plaintiff further notes that 14,170 of these also included a conflicting date of birth or last name. (*Id.*)

[6] The Court closely reviewed the expert report(s), including the technique(s) applied to weed out transposition and similar errors. (*See* Dkt. No. 166 at 17–27, 44–54.) They provide the Court no assurance that erroneous personal identifiers are, necessarily, *associated with someone else's health record(s)*. Which is Plaintiff's core allegation. (*See* Dkt. No. 1 at 4) (alleging that Defendant's practices result in "mixed" files).

[7] Plaintiff proposes a post-trial administration process to gather such evidence. (*See* Dkt. No. 203 at 15.) Certainly, this is appropriate in many instances. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016). But not when standing is at issue. *See TransUnion LLC*, 594 U.S. at 431.

[8] In Plaintiff's motion for partial summary judgment, which he asked the Court to hold in abeyance, Plaintiff provides direct evidence of misattributed health records for 47 of the prospective class members. (*See* Dkt. No. 185 at 10–16) (citing Dkt. No. 184-21). It appears Plaintiff gleaned this information from evidence provided through discovery. *Id.* But he provides no assurance that this could feasibly be accomplished for the 311,179 remaining inaccuracy class members.

1  record(s), along with Defendant's representative's testimony that this is, indeed, Defendant's

2  standard practice. (*See* Dkt. Nos. 22 at 18, 96-2 at 43.) This, unlike the statistical analysis of

3  proxies described above, *i.e.*, personal identifiers, is direct evidence of harm, at least to the

4  reinvestigation class members. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th

5  Cir. 2021) (for FCRA purposes "wasted time is a concrete harm").

6        Accordingly, the Court DISMISSES Plaintiff's claims brought solely on behalf of the

7  inaccuracy class, based on a failure to establish class-wide standing.

8        **B.**    **Motions to Seal**

9        Plaintiff filed certain supporting exhibits and an unredacted version of its briefing under

10 seal (Dkt. Nos. 184, 207, 212) and then moved to maintain those documents under seal. (*See* Dkt.

11 Nos. 183, 206, 211.) He did so consistent with the protective order in this case. (*See* Dkt. No.

12 28.) "[T]here is a strong presumption of public access to [the Court's] files." W.D. Wash. Local

13 Civ. R. 5(g)(3). To overcome that presumption, a party must show "compelling reasons" to seal a

14 document attached to a dispositive motion. *See Kamakana v. City and Cnty. of Honolulu*, 447

15 F.3d 1172, 1178–81 (9th Cir. 2006). The Court has reviewed the documents at issue (Dkt. Nos.

16 184, 207, 212) and concludes that a compelling reason exists to seal the underlying materials.

17 Namely, that the documents contain proprietary information, the disclosure of which would be

18 harmful to Defendant's business.

19 **III.**    **CONCLUSION**

20       For the foregoing reasons, Defendant's motion for summary judgment and/or to decertify

21 the inaccuracy class (Dkt. No. 167) is GRANTED in part and DENIED in part. The inaccuracy

22 class is DISMISSED for lack of class-wide standing. The reinvestigation class survives.

23 Plaintiff's motion to modify the definition of the inaccuracy class (Dkt. No. 166) is DENIED as

24 moot. In addition, the parties' motions to seal (Dkt. Nos. 183, 206, 211) are GRANTED. The

25 Clerk is DIRECTED to maintain Docket Numbers 184, 207, 212 under seal.

26

The parties are DIRECTED to meet and confer and provide the Court with a joint status report containing a proposed revised case management schedule within 14 days of this order.

DATED this 22nd day of February 2024.

*(signature)*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C20-1473-JCC
PAGE - 7